# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Venedia Larita Campbell and<br>Martin Alan Smith, II,<br><br>                Plaintiffs,<br><br>v.<br><br>Andrew William Schroeder, acting in his individual capacity, Kyle Allen Williams, acting in his individual capacity, Paul Franz Albers, acting in his individual capacity, Robert Aaron Greer, acting in his individual capacity, Drew Scott Clark, acting in his individual capacity, John Cameron Haugland, acting in his individual capacity, City of Minneapolis, and Ramsey County.<br><br>                Defendants. | Case No.<br>**Complaint**<br><br>Jury Trial Demanded<br>Fed. R. Civ. P. 38(b) |

For their Complaint, Plaintiffs Venedia Larita Campbell ("Campbell") and Martin Alan Smith, II ("Smith") state and allege as follows:

## PARTIES AND VENUE

1.      Plaintiff Campbell is a resident of St. Paul, Ramsey County, Minnesota.

2.      Plaintiff Smith is a resident of St. Paul, Ramsey County, Minnesota.

3.      Defendant Andrew William Schroeder ("Schroeder") is, upon information and belief, a citizen of Minnesota. Schroeder served as a Minneapolis Police Department ("MPD") officer on May 20 and 21, 2022. Schroeder acted under color of state law at all material times. He is sued in his individual capacity.

4.      Defendant Kyle Allen Williams ("Williams") is, upon information and belief, a citizen of Minnesota. Williams served as a Ramsey County Sheriff's Office ("RCSO") deputy on May 20 and 21, 2022. Williams acted under color of state law at all material times. He is sued in his individual capacity.

5.      Defendant Paul Franz Albers ("Albers") is, upon information and belief, a citizen of Minnesota. Albers served as an MPD officer on May 20 and 21, 2022. Albers acted under color of state law at all material times. He is sued in his individual capacity.

6.      Defendant Robert Aaron Greer ("Greer") is, upon information and belief, a citizen of Minnesota. Greer served as an MPD officer on May 20 and 21, 2022. Greer acted under color of state law at all material times. He is sued in his individual capacity.

7.      Defendant Drew Scott Clark ("Clark") is, upon information and belief, a citizen of Minnesota. Clark served as an MPD officer on May 20 and 21, 2022. Clark acted under color of state law at all material times. He is sued in his individual capacity.

8.      Defendant John Cameron Haugland ("Haugland") is, upon information and belief, a citizen of Minnesota. Haugland served as an MPD officer on May 20 and 21, 2022. Haugland acted under color of state law at all material times. He is sued in his individual capacity.

9.      Defendant City of Minneapolis is a municipality incorporated in the State of Minnesota and the public employer of Defendants Schroeder, Albers, Greer,

Clark, and Haugland. The MPD is an agency of the City of Minneapolis. Defendant Minneapolis is a party to this action on the theories of respondeat superior and vicarious liability pursuant to Minn. Stat. § 466.02 based upon the actions of the MPD Defendants.

10.     Defendant Ramsey County is a municipal corporation and the public employer of Defendant Williams. The RCSO is an agency of Ramsey County. Defendant Ramsey County is a party to this action on the theories of respondeat superior and vicarious liability pursuant to Minn. Stat. § 466.02 based upon the actions of Defendant Williams.

## **JURISDICTION**

11.     Campbell and Smith bring this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. §§ 1331 and 1343(a)(3). These statutory and constitutional provisions confer original jurisdiction of this Court over this matter.

12.     The events giving rise to this action occurred in St. Paul, Minnesota. Venue is proper under 28 U.S.C. § 1391(b)(2).

13.     State-law claims stated herein arise from the same case or controversy as the claims providing original jurisdiction. Supplemental jurisdiction over those claims is appropriate pursuant to 28 U.S.C. § 1367(a).

## FACTUAL ALLEGATIONS

14. On or about May 20, 2022, at approximately 9:16 p.m., Minneapolis police officers responded to a shooting in Minneapolis, Minnesota. When officers arrived, they learned that the suspects had fled the area with the victim's vehicle.

15. The victim's possessions were in the vehicle, including the victim's cell phone and lawnmower.

16. Officers started investigating the location of the suspects and the victim's vehicle.

17. As part of their investigation, officers requested location information for the victim's cell phone.

18. At approximately 11:00 p.m., a ping located the victim's cell phone near 680-741 Charles Ave. in St. Paul. The ping was narrowed to the area of 718 Charles Ave. in St. Paul.

19. Schroeder responded to the area where the victim's cell phone pinged in St. Paul.

20. Minneapolis police officers contacted Ramsey County Sheriff's Office deputies to assist with the investigation in St. Paul.

21. Williams served as a Ramsey County Sheriff's Office deputy on May 20, 2022.

22. Williams picked up Schroeder in an unmarked squad car near the location where the victim's cell phone pinged in St. Paul.

23.     The victim's vehicle was located in an apartment building parking lot at 683 Sherburne Ave.

24.     Williams and Schroeder were in the unmarked squad car and observed the victim's vehicle as it sat in the parking lot.

25.     Williams claimed that he observed three Black males approach the victim's vehicle. Williams claimed that he saw a small to medium sized dog, about knee height, with the men.

26.     Williams claimed that two of the men entered the victim's vehicle. He claimed that after a few minutes, the men exited the vehicle, and they all walked west bound away from the location.

27.     Officers eventually lost sight of the men.

28.     Officers continued to observe the victim's vehicle but did not observe any further activity.

29.     Other officers searched the area surrounding vehicle.

30.     The victim's cell phone was found in an alley behind Smith and Campbell's home.

31.     During the investigation, other officer referred to the phone being located in the "alley."

32.     A small portion of Smith and Campbell's driveway and yard was publicly accessible in the alley. The remainder of the yard was not accessible, as it was behind a fence and their garage.

33.    The phone was not found in the area of Smith and Campbell's property that was not publicly accessible.

34.    The victim's lawnmower was found in the backyard of Smith and Campbell's neighbor.

35.    Upon discovering the lawnmower, officers contacted the neighbor and asked if the lawnmower belonged to the neighbor. The neighbor confirmed that the lawnmower was not theirs, so officers collected it as evidence.

36.    Officers did not arrest the neighbor.

37.    Officers did not attempt to search the neighbor's home.

38.    The path of the cell phone, lawnmower, and the victim's vehicle were consistent with suspects dumping the items along the alley and parking the victim's vehicle in an apartment parking lot.

39.    During the investigation, an officer observed multiple barking dogs at Smith and Campbell's residence within the fenced area.

40.    Williams falsely stated that one of Smith and Campbell's dogs was the same dog seen with the three men who approached and entered the victim's vehicle.

41.    In truth, none of Smith and Campbell's dogs could have been the dog referenced by Williams.

42.    Smith and Campbell's dogs remained in their backyard throughout the evening.

43.    Smith and Campbell's dogs generally bark at strangers and would not allow a stranger to walk them without commotion.

44.    Campbell was home during the evening of May 20, 2022.

45.    Campbell did not observe any signs that her dogs left the backyard that evening.

46.    Smith was awoken in the middle of the night to his dogs barking.

47.    Smith went to the backyard to see what caused the commotion.

48.    Smith saw a large police presence outside.

49.    He went inside and woke up Campbell. He told her what was going on.

50.    Officers directed Smith to come out of the residence.

51.    He did so and was summarily arrested and transported for interrogation.

52.    Campbell was also ordered out of her residence.

53.    Campbell came out and was also summarily arrested and transported for interrogation.

54.    Schroeder prepared a search warrant application, seeking a search of Smith and Campbell's home and garage.

55.    The application was signed under penalty of perjury by Schroeder.

56.    The application contained multiple false statements included to cause a search warrant to issue.

57.     In the absence of the false statements, a search warrant would not have been authorized. Further, no search of Smith or Campbell's home would have been permissible without the warrant.

58.     Schroeder claimed that the victim's cell phone was found "in the driveway" of Smith and Campbell's residence. Schroeder failed to include material information that the cell phone was found in a publicly accessible portion of the alley behind Smith and Campbell's residence. Schroeder failed to include material information that the yard was fenced off, and the cell phone was not found in the portion of the yard that was not publicly accessible.

59.     Schroeder falsely claimed that the dog in Smith and Campbell's backyard was the same dog seen with the men who entered the victim's vehicle. In fact, Smith and Campbell's dog was not the dog seen with those men.

60.     Schroeder falsely claimed that the victim's lawnmower was located "in the rear of [Smith and Campbell's] house." In truth, the lawnmower was found in the neighbor's backyard, consistent with possessions being dumped in the alley as the vehicle drove toward the apartment parking lot. Schroeder failed to include material information that possessions were found in multiple yards, not just Smith and Campbell's.

61.     Schroeder falsely claimed that Smith "attempted to flee" when first encountering officers.

62.    Upon information and belief, Schroeder, Williams, and other officers conspired to make statements suggesting that Smith and Campbell had a greater connection to the shooting than objective facts established.

63.    Upon information and belief, Schroeder, Williams, and other officers made false statements because they knew that the actual evidence was insufficient to cause a search of Smith and Campbell's home or the arrests of Smith and Campbell.

64.    Due to the false statements, Smith and Campbell were arrested and interrogated without legal basis.

65.    Other officers participated in the unlawful arrests and interrogation of Smith and Campbell.

66.    Clark transported Smith in custody to be interrogated. Upon information and belief, Clark knew that the arrest and interrogation of Smith was without legal basis.

67.    Haugland ordered the transportation in custody and interrogation of Smith. Upon information and belief, Haugland knew that the arrest and interrogation of Smith was without legal basis.

68.    Albers and Greer conducted interrogations of Smith and Campbell while they were under arrest and in custody.

69.    The interrogations confirmed that Smith and Campbell had nothing to do with the shooting.

70.     Upon information and belief, Albers and Greer knew that the arrests and interrogations of Smith and Campbell were done without legal basis.

71.     Albers and Greer seized and retained Smith's cell phone following the interrogation. They would not release the phone before a search of its contents was conducted.

72.     Due to the false statements, members of the Ramsey County Sheriff's Office SWAT team conducted a high-risk entry of Smith and Campbell's home.

73.     The SWAT team's entry and inspection of the home caused significant property damage, including destruction of the front door.

74.     Minneapolis police officers subsequently conducted a search of Smith and Campbell's home, causing further harm, including invasion of privacy.

75.     The entry and search of Smith and Campbell's home would not have occurred in the absence of the false statements made by the conspiring officers.

76.     Smith and Campbell suffered personal harm due to their unlawful arrests, interrogations, and search of their property. Smith and Campbell were detained for multiple hours. They were subjected to traumatic conditions. The operations were loud and drew the attention of neighbors. Smith and Campbell suffered stigma due to the police raid and their arrests in the middle of the night.

77.     The trauma and disruption of police conduct impaired Smith's ability to work. Smith and Campbell report continued anxiety and symptoms consistent with PTSD.

78.    Following the search, Smith and Campbell were required to clean up the significant mess and property damage left following the search. They were also responsible for repair and replacement of damaged items.

79.    As a result of officers' activities, Smith and Campbell have suffered multiple harms. Harms include, but are not limited to, arrest and detention, stigma, property damage, loss of use of property, and work disruption.

80.    The City of Minneapolis and Ramsey County were the employers of the defendant officers at the time of the incident. The actions undertaken by the defendant officers were done in connection with their employment by Minneapolis and Ramsey County.

## CAUSES OF ACTION

### Count 1 – 42 U.S.C. § 1983 – Fourth Amendment Violation:
### False Search Warrant
### *Defendants Schroeder and Williams*

81.    Campbell and Smith reallege the allegations in Paragraphs 1-80 as if fully stated herein.

82.    Schroeder and Williams acted under color of state law while performing the acts described herein.

83.    Schroeder and Williams deprived Smith and Campbell of their Fourth and Fourteenth Amendment rights through the actions described herein.

84.    Objective facts supporting probable cause to search Smith and Campbell's did not exist when the search warrant was issued.

85. Schroeder and Williams provided false information and omitted material information from the search warrant application to support the issuance of a search warrant that would not otherwise have been issued.

86. Due the false information and material omissions, a search warrant did issue based upon Schroeder's application.

87. Upon information and belief, Schroeder and Williams knowingly and intentionally, or with reckless disregard for the truth, provided false or misleading information and omitted material information to mislead the reviewing judge that would have demonstrated a lack of probable cause.

88. As direct and proximate result of the acts of Schroeder and Williams, Smith and Campbell suffered injuries and other harms that entitle them to damages. Such injuries include, but are not limited to, invasion of privacy, property damage resulting due to the search, damages due to trauma and disruption, and other harms resulting from the unlawful search and allegations.

89. Schroeder and Williams acted with evil intent or reckless indifference to the plaintiffs' rights. Schroeder and Williams subjected the plaintiffs to deprivations of their rights in such a manner as to render Schroeder and Williams liable for punitive damages. Punitive damages are necessary to punish the defendants for their conduct and deter further improper conduct.

90. Smith and Campbell are entitled to fully recover their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

**Count 2 – 42 U.S.C. § 1983 – Fourth Amendment Violation:**
**Invalid Search Warrant**
*Defendants Schroeder and Williams*

91.     Campbell and Smith reallege the allegations in Paragraphs 1-80 as if fully stated herein.

92.     Schroeder and Williams acted under color of state law while performing the acts described herein.

93.     Schroeder and Williams deprived Smith and Campbell of their Fourth and Fourteenth Amendment rights through the actions described herein.

94.     Objective facts supporting probable cause to search Smith and Campbell's did not exist when the search warrant was issued.

95.     At the time of the search upon Smith and Campbell's residence, there were no facts particularly tying Smith and Campbell to the shooting incident or suggesting that further evidence would be obtained from private areas of Smith and Campbell's home.

96.     Upon information and belief, the search warrant application was lacking in indicia of probable cause so as to render official belief in its existence unreasonable. The affidavit also contained false information that misled the issuing judge.

97.     Despite a facially-deficient application, Schroeder and Williams conducted a search of Smith and Campbell's residence in violation of the plaintiffs' Fourth Amendment rights.

98.    As direct and proximate result of the acts of the defendants, Smith and Campbell suffered injuries and other harms that entitle them to damages.

99.    Schroeder and Williams acted with evil intent or reckless indifference to the plaintiffs' rights. Schroeder and Williams subjected the plaintiffs to deprivations of their rights in such a manner as to render Schroeder and Williams liable for punitive damages. Punitive damages are necessary to punish the defendants for their conduct and deter further improper conduct.

100.    Smith and Campbell are entitled to fully recover their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

### Count 3 – 42 U.S.C. § 1983 – Fourth Amendment Violation: Unreasonable Search and Seizure of Possessions
*Defendants Schroeder, Williams, Albers, and Greer*

101.    Campbell and Smith reallege the allegations in Paragraphs 1-80 as if fully stated herein.

102.    Schroeder, Williams, Albers, and Greer acted under color of state law while performing the acts described herein.

103.    Schroeder and Williams caused a search to occur in an unreasonable manner. Based on false and misleading information, as well as directives, officers engaged in a destructive and violent search of Smith and Campbell's residence.

104.    Both Schroeder and Williams participated in the search of Smith and Campbell's residence.

105.    During the search, officers broke down the front door of the home, despite the home being unoccupied and the door being unlocked.

106.    During the search, officers damaged personal property and left possessions strewn across rooms.

107.    Officers seized personal property and retained them in an unreasonable manner, long after no connection to the shooting incident had been found.

108.    Albers and Greer seized Smith's phone and would not return it despite Smith having been arrested without legal basis and having no connection to the shooting that was being investigated.

109.    As direct and proximate result of the acts of the defendants, Smith and Campbell suffered injuries and other harms that entitle them to damages.

110.    Schroeder, Williams, Albers, and Greer acted with evil intent or reckless indifference to the plaintiffs' rights. Schroeder and Williams subjected the plaintiffs to deprivations of their rights in such a manner as to render these defendants liable for punitive damages. Punitive damages are necessary to punish the defendants for their conduct and deter further improper conduct.

111.    Smith and Campbell are entitled to fully recover their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

### Count 4 – 42 U.S.C. § 1983 – Fourth Amendment Violation: Unlawful Arrest and Detention
***Defendants Schroeder, Williams, Albers, Greer, Clark, and Haugland***

112.    Campbell and Smith reallege the allegations in Paragraphs 1-80 as if fully stated herein.

113.   Schroeder, Williams, Albers, Greer, Clark, and Haugland acted under color of state law while performing the acts described herein.

114.   Schroeder and Williams caused the unlawful arrests of Smith and Campbell by providing false and misleading information. Even with this false and misleading information, however, there was still no probable cause for other officers to arrest Smith and Campbell.

115.   Clark and Haugland participated in the arrest and transport of Smith and Campbell to be interrogated.

116.   Albers and Greer interrogated Smith and Campbell and kept them in custody despite having no legal basis to do so.

117.   Upon information and belief, Schroeder, Williams, Albers, Greer, Clark, and Haugland knew that probable cause to arrest and detain Smith and Campbell did not exist.

118.   As direct and proximate result of the acts of the defendants, Smith and Campbell suffered injuries and other harms that entitle them to damages.

119.   Schroeder, Williams, Albers, Greer, Clark, and Haugland acted with evil intent or reckless indifference to the plaintiffs' rights. Schroeder and Williams subjected the plaintiffs to deprivations of their rights in such a manner as to render these defendants liable for punitive damages. Punitive damages are necessary to punish the defendants for their conduct and deter further improper conduct.

120.   Smith and Campbell are entitled to fully recover their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

**Count 5 – 42 U.S.C. § 1983 – Conspiracy to Commit Violations of Constitutional Rights**
*Defendants Schroeder, Williams, Albers, Greer, Clark, and Haugland*

121.    Campbell and Smith reallege the allegations in Paragraphs 1-80 as if fully stated herein.

122.    Schroeder, Williams, Albers, Greer, Clark, and Haugland acted under color of state law while performing the acts described herein.

123.    MPD officers Schroeder, Albers, Greer, Clark, and Haugland conspired with RCSO deputy Williams to engage in an unlawful search of Smith and Campbell's residence and effect unlawful arrests of Smith and Campbell.

124.    In furtherance of the conspiracy, Schroeder and Williams provided false and misleading information and engaged in a search of Smith and Campbell's residence. Albers, Greer, Clark, and Haugland participated in the arrests and detention of Smith and Campbell.

125.    As direct and proximate result of the acts of the defendants, Smith and Campbell suffered injuries and other harms that entitle them to damages.

126.    Schroeder, Williams, Albers, Greer, Clark, and Haugland acted with evil intent or reckless indifference to the plaintiffs' rights. Schroeder and Williams subjected the plaintiffs to deprivations of their rights in such a manner as to render these defendants liable for punitive damages. Punitive damages are necessary to punish the defendants for their conduct and deter further improper conduct.

127.    Smith and Campbell are entitled to fully recover their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## Count 6 – False Arrest and Imprisonment
### *Defendants Schroeder, Williams, Albers, Greer, Clark, and Haugland*

128.    Campbell and Smith reallege the allegations in Paragraphs 1-80 as if fully stated herein.

129.    The officer defendants arrested and imprisoned Smith and Campbell without legal basis.

130.    Schroeder and Williams provided false and misleading statements to cause the arrests of the plaintiffs.

131.    Clark and Haugland participated in the arrests and transport of the plaintiffs.

132.    Albers and Greer participated in the interrogations and continued detention of the plaintiffs.

133.    Upon information and belief, each officer knew that the arrests and detention of the plaintiffs was without legal basis and in violation of the plaintiffs' legal rights. Because the arrests were conducted in known violation of the plaintiffs' rights, the defendants' conduct was willful and malicious.

134.    As a direct and proximate result of the acts of the defendants, the plaintiffs suffered injuries and other harms that entitle them to damages in amounts to be determined at trial.

## Count 7 – Conversion of Property
### *Defendants Schroeder and Williams*

135.    Campbell and Smith reallege the allegations in Paragraphs 1-80 as if fully stated herein.

136.    Schroeder and Williams made false statements to cause the entry and search of Smith and Campbell's residence.

137.    Schroeder and Williams participated in the entry and search of Smith and Campbell's residence.

138.    Through their conduct, they and other officers intentionally destroyed Smith and Campbell's property, including the front door of the residence.

139.    Upon information and belief, each officer knew that the entry and search was without legal basis and in violation of the plaintiffs' legal rights. Further, the defendants knew that the false statements violated the plaintiffs' rights. Because entry and search was conducted in known violation of the plaintiffs' rights, the defendants' conduct was willful and malicious.

140.    As a direct and proximate result of the acts of the defendants, the plaintiffs suffered injuries and other harms that entitle them to damages in amounts to be determined at trial.

### Count 8 – Vicarious Liability
### *Defendants City of Minneapolis and Ramsey County*

141.    Campbell and Smith reallege the allegations in Paragraphs 1-80 as if fully stated herein.

142.    During the relevant periods, the City of Minneapolis employed Schroeder, Albers, Greer, Clark, and Haugland as MPD officers.

143.    During the relevant periods, Ramsey County employed Williams as an RCSO deputy.

144.   While the officer defendants were acting within the scope of their employment, they engaged in unlawful actions that caused harm to the plaintiffs.

145.   The defendant officers engaged in false arrest and imprisonment and conversion of property while acting within the scope of their employment.

146.   This conduct harmed the plaintiffs.

147.   As employers of the defendants, City of Minneapolis and Ramsey County are liable on the basis of vicarious liability and respondeat superior. The plaintiffs are entitled to damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Smith and Campbell pray for judgment as follows:

1.   That the Court find the defendants liable for the claims asserted herein;

2.   A money judgment against the defendants, jointly and severally, in amount to be determined at trial for compensatory and other damages, including punitive damages, together with costs, including reasonable attorneys' fees under 42 U.S.C. § 1988 and prejudgment interest;

3.   For such other and further relief as this Court may deem just and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Date: March 12, 2024

**LAW OFFICE OF ERIC A. RICE, LLC**

*s/Eric Rice*
Eric A. Rice (MN #0388861)
1 W. Water St., Ste. 275
St. Paul, MN 55107
P: (651) 998-9660
F: (651) 344-0763
eric@ricedefense.com

Attorney for Plaintiffs Venedia Campbell and Martin Smith